# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | P. Michael Mahoney | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50460 | **DATE** | 12/14/2001 |
| **CASE TITLE** | LARSON vs. MASSANARI | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached order, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Enter attached Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | DEC 14 2001 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 12/14/2001 | |
| | | date mailed notice | |
| tml | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

**DOCKETED**
**DEC 14 2001**

MELINDA R. LARSON

v.

KENNETH APFEL

**JUDGMENT IN A CIVIL CASE**

Case Number: 00 C 50460

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Judgement is entered in favor of the defendant and against the plaintiff.

Michael W. Dobbins, Clerk of Court

Date: 12/14/2001

Gale L. Graeff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| MELINDA R. LARSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LARRY G. MASSANARI, ) <br> Acting Commissioner of ) <br> Social Security Administration, ) <br> ) <br> Defendant. ) | Case No. 00 C 50460 <br><br> Philip G. Reinhard <br> P. Michael Mahoney |

## MEMORANDUM OPINION AND ORDER

Plaintiff, (Plaintiff), seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner). See 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's final decision denied Plaintiff's application for Supplemental Security Income (SSI) pursuant to the Social Security Act (the Act). 42 U.S.C. §1382c. This matter is before the Magistrate Judge pursuant to consents filed by both parties on March 30, 2001. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

I.  **BACKGROUND**

Plaintiff applied for SSI benefits on January 29, 1998, alleging disability due to back problems and urinary tract problems beginning in January of 1991. (Tr. 80-83). Plaintiff's initial application was denied on April 3, 1998, and her request for reconsideration was denied on July 21, 1998. (Tr. 54-57, 60-62). On September 24, 1998, Plaintiff filed a Request for Hearing. (Tr. 63-64). Plaintiff appeared, with counsel, for a hearing on her claim before an Administrative Law Judge

(ALJ) on February 17, 1999. (Tr. 19-51). In a hearing decision dated March 25, 1999, the ALJ denied Plaintiff's claim for SSI benefits. (Tr. 9-18). Plaintiff then requested a review of the ALJ's decision in a letter dated May 20, 1999. (Tr. 8). On December 1, 2000, Plaintiff was notified by the Appeals Council that her Request for Review had been denied. (Tr. 5-7). Plaintiff then filed the complaint addressed herein on December 29, 2000.

## II. FACTS

Plaintiff was born on July 1, 1967, and was thirty-six years old at the time of the hearing. (Tr. 23). Plaintiff completed school through the eighth grade and received her GED in 1987. (Tr. 24-25). Plaintiff currently works driving a bus for special needs children in the Rockford School District. (Tr. 334-36). Plaintiff works twenty-eight hours a week as a bus driver and had held that job for three months prior to the hearing. (Tr. 36). Prior to her current employment, Plaintiff was a telemarketer in 1995. (Tr. 25). Plaintiff has also worked as a fast food employee, as an aide at a group home and as a hand-packager. (Tr. 25-29). Plaintiff did not hold any of those positions for more than a year. (Tr. 29). As to her condition, Plaintiff testified to the ALJ that she is only able to walk a couple of blocks at a time, she can stand and sit for only half an hour before she must change positions and that she is more comfortable sitting with her legs elevated. (Tr. 31-32). Plaintiff testified that her children help her with the housework, carrying heavy items and preparing their breakfast. (Tr. 32-33). Plaintiff reported that the household chores that she is still able to do are dishes, some laundry and cooking one meal each day. (Tr. 42). Plaintiff stated that she had difficulties with bending, stooping and squatting, that she is able to lift no more than ten pounds, that she has joint pain in her hands and that she has a urinary tract problem that causes her to urinate

frequently. (Tr. 36-38). Plaintiff testified that she experiences pain in her back about 80 percent of the time and that the pain medication does give her some relief but that she is still not able to do many of the things she used to do. (Tr. 40-41).

Vocational Expert Testimony

A vocational expert, Mr. Ronald Gehrig, testified at Plaintiff's hearing. (Tr. 45-48). The ALJ asked Mr. Gehrig what types of jobs someone of Plaintiff's age, education and work experience who can lift twenty pounds occasionally and ten pounds frequently, can stand or walk for six hours of an eight-hour day, can sit for an unlimited amount of time and can bend only occasionally can perform. (Tr. 46). Mr. Gehrig responded that such an individual could perform 42,502 sedentary positions and 128,217 light positions that exist in the state of Illinois. (Tr. 47). The ALJ then asked what effect adding the additional restrictions that that person required a sit/stand option to be able to change positions every hour for five minutes would have. (Tr. 47). Mr. Gerhig responded that such a limitation would not have any effect on the number of positions available. (Tr. 48). The ALJ then asked whether it would have an effect if the individual required a sit/stand option that allowed them to change position at will and perform the job either sitting or standing. (Tr. 48). Mr. Gehrig answered that such a limitation would eliminate 43,243 positions. (Tr. 48). The ALJ then asked what effect would be seen on the number of available positions if the individual were unable to perform repetitive gripping with her non-dominant hand. (Tr. 48). Mr. Gehrig responded that the remaining positions would not be affected. (Tr. 49). Then, the ALJ asked what effect would be had if the individual had to go to the bathroom every fifteen minute to half an hour. (Tr. 49). Mr. Gehrig responded that such a limitation would eliminate the remaining positions. (Tr. 49). Finally, the ALJ asked whether the limitations imposed by the assessment completed by Dr. Stocker (see below)

3

would eliminate all work. (Tr. 49). Mr. Gehrig responded that Dr. Stocker's assessment would eliminate all work. (Tr. 49).

### III. MEDICAL HISTORY

At the hearing before the ALJ, Plaintiff testified that she suffered from back pain, a urinary tract problem, pain and swelling in her wrist and joint pain in her hands. (Tr. 30-39). Plaintiff's medical records indicate that on July 28, 1993, Plaintiff sought treatment for pain and some numbness in her right hip. (Tr. 125). An MRI was performed on July 29, 1993, that indicated no abnormalities of the pelvis. (Tr. 128). An MRI was also performed as to the lumbar spine and that indicated the existence of some dessication of the L4-L5 disc with a small midline herniation and an uncompromised neural foramina. (Tr. 129). That MRI also indicated probable bilateral spondyloysis of the pars interarticularis of L5 and a minimal slippage of L5 on S1 with no disc herniation or significant compromise of the neural foramina. (Tr. 129-130). A letter dated September 1, 1993, from Dr. Ronald F. Yake, a neurologist, to Plaintiff's physician, Dr. Edwin Okeson, reported that Plaintiff had a normal neurological evaluation and was in good shape and that it was recommended that she do some moderate exercise to maintain her muscle tone. (Tr. 153-154). Dr. Yake referred Plaintiff to a neurosurgeon, Dr. Morris Marc Soriano, for a second opinion. (Tr. 154). On September 17, 1993, Dr. Soriano reported to Dr. Yake that he had examined Plaintiff and determined that surgical intervention would be "somewhat aggressive" in her case and that he encouraged her to begin exercising and to seek employment that did not involve a risk to her back. (Tr. 155).

On February 24, 1995, Plaintiff was seen for complaints of unexplained weight gain. (Tr. 132-136). Plaintiff reported that she had gained fifteen pounds during the previous six months with

no change in her diet or activity level. (Tr. 136). Plaintiff was instructed to keep a diary of her food consumption over the next week for the doctor to review at her next appointment. (Tr. 135-136). At her next appointment on March 3, 1995, Plaintiff did not take her diary to review with the doctor and the doctor noted that Plaintiff's cholesterol level was high but that the blood test results did not indicate a cause for Plaintiff's weight gain. (Tr. 135).

On August 1, 1995, Plaintiff was seen for a regular pap smear and complained of irregular bleeding. (Tr. 138). No abnormalities were noted from that exam. (Tr. 138). Plaintiff was then seen on July 30, 1996, for her annual pap smear. (Tr. 137). At that time, Plaintiff complained of some irregular bleeding and a painful callous on the bottom of her right foot. (Tr. 137). Plaintiff also complained of a feeling of fullness in her bladder and a need to urinate every hour or two. (Tr. 137). The treating physician noted that Plaintiff had an enlarged uterus, a fragile cervix, possibly due to infection, a possible ovarian cyst and fullness of the bladder, secondary to enlargement of the uterus. (Tr. 137). On August 5, 1996, Plaintiff had a follow-up appointment to address her bladder problem. (Tr. 139). The treatment notes indicate a possible dysfunction of the detrusor muscles as well as the bladder neck and sphincter muscles, and Plaintiff was referred for a urological consult. (Tr. 139). An August 21, 1996, letter from a urologist, Dr. Mark Cormier, indicates that Plaintiff's urinary problem may have been due to the large amounts of carbonated beverages she was consuming. (Tr. 144).

On February 27, 1998, Plaintiff was seen for a complete physical. (Tr. 139). At that time, it was noted that Plaintiff was experiencing right lower lumbar pain that radiated to her hip flexor, a burning sensation in her left arm and constipation. (Tr. 139, 159-160). Plaintiff reported that she had experienced problems with her back since she was thirteen years old and that the pain has

continually worsened and now includes a burning sensation. (Tr. 159). Plaintiff reported that she suffered some headaches, occasional constipation and diarrhea, and some urinary incontinence. (Tr. 159). The reporting physician noted that Plaintiff may have some peripheral vascular disease or rheumatological condition, as indicated by her erythematous and colder hands and feet, as well as some vascular abnormalities in her eyes. (Tr. 160). It was also noted, that as to Plaintiff's back, there was no evidence of neurologic dysfunction but that new x-rays should be taken. (Tr. 160). Also, Plaintiff's bladder condition was noted to be stable. (Tr. 160).

On March 13, 1998, Plaintiff was seen for a follow-up appointment as to her leg pain. (Tr. 161). At that time, it was again noted that she may have a collagen vascular disease. (Tr. 161). Her treating physician, Dr. Stocker, also noted that she was complaining of muscle weakness in the upper extremities and bladder instability. (Tr. 161). Dr. Stocker noted a concern that Plaintiff may be suffering from MS but that she could not afford an MRI at that time. (Tr. 161). Dr. Stocker also completed a survey form from the Bureau of Disability Determination Services regarding Plaintiff's condition. (Tr. 164-165). Dr. Stocker indicated a primary diagnosis of L5 spondylothesis on S1 with lumbar back pain and sensory changes. (Tr. 164). Dr. Stocker reported that Plaintiff experienced pain in the hip flexors and L4-S1, no appreciable sensory loss and decreased reflexes in all extremities. (Tr. 164). In his report, Dr. Stocker also noted that Plaintiff had a neurogenic bladder condition. (Tr. 165). Plaintiff was seen on May 13, 1998, for complaints of shoulder and wrist pain. (Tr. 163). Plaintiff reported that she had been experiencing pain in her left wrist on and off for a couple of years and that the shoulder pain began recently and worsens when she moves her arms. (Tr. 163). Dr. Stocker noted that Plaintiff had good range of motion (ROM) and normal strength with some pinpoint tenderness at the clavicle. (Tr. 163). The notes indicate that Dr. Stocker suspected

Plaintiff's pain resulted from osteoarthritis. (Tr. 163).

A Residual Functional Capacity (RFC) Analysis of Plaintiff was completed by Dr. William Conroy on August 20, 1998. (Tr. 166-173). Dr. Conroy noted that Plaintiff ambulated unassisted, had no sensory loss, had normal reflexes and full ROM in the LS spine. (Tr. 167). Dr. Conroy determined, from a review of Plaintiff's medical records, that Plaintiff was able to lift up to twenty-five pounds frequently, was able to stand, walk or sit for six hours in an eight hour workday, and was not limited in her ability to push or pull, had no postural, manipulative, visual, communicative or environmental limitations. (Tr. 167-171).

Dr. Stocker, in a note, indicated that Plaintiff is not able to lift more than ten pounds and is limited in weight bearing to fifteen minutes at a time. (Tr. 175). Dr. Stocker reported that Plaintiff has spondylithesis of L4 and L5 which causes severe neuropathic pain. (Tr. 175). On June 10, 1998, Dr. Stocker completed an RFC questionnaire provided by Plaintiff's attorney. (Tr. 176-182). Dr. Stocker indicated that Plaintiff had been her patient since March 1998, and suffered from spondylithesis and spondylolysis of L5, disc herniation of L4-L5 and osteoarthritis as confirmed by physical exam and an MRI. (Tr. 176). Plaintiff reportedly experiences weakness and pain bilaterally in her arms and fingers that is worsened by activity. (Tr. 177). Dr. Stocker reports that Plaintiff has some tenderness and crepitus in the wrist and cervical areas, swelling in the ulnar area and no abnormal gait, reflex changes, sensory loss, muscle spasm, atrophy or weakness. (Tr. 177). Dr. Stocker indicated that Plaintiff was not a malingerer and that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described. (Tr. 177-178). As to her functional limitations, Dr. Stocker indicated that Plaintiff's pain was often severe enough to interfere with her concentration, that Plaintiff was able to walk three to five blocks without resting, that

Plaintiff can sit for thirty minutes and stand for fifteen minutes at a time. Additionally, that Plaintiff can sit, stand or walk for four hours in an eight hour work day with normal breaks, but that Plaintiff must be able to shift positions frequently and take unscheduled breaks. (Tr. 178-179). Dr. Stocker also noted that Plaintiff should elevate her legs during prolonged sitting for 25 percent of the time spent sitting, that Plaintiff has significant limitations in repetitive fingering, reaching and handling and that Plaintiff should lift no more than ten pounds occasionally. (Tr. 180).

## IV.  **STANDARD OF REVIEW**

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the court, however is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citation omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987), *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of the witness, the determination may only be disturbed if it is "patently wrong" or if it finds no support in the record. *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th cir. 1989), *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However, when such determinations rest on objective factors of fundamental implausibilities rather than subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), *Yousif v. Chater*, 901 F.Supp. 1377, 1384 (N.D. Ill. 1995).

## V.  **FRAMEWORK FOR DECISION**

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied her application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

9

techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1998).[1] The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past; and (5) whether the claimant is capable of performing any other work in the national economy.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[2] A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education,

---

[1] The Commissioner has promulgated parallel regulations governing disability determinations under Title II and Title XVI. See 20 C.F.R. Ch. III, Parts 404, 416. For syntactic simplicity, future references to Part 416 of the regulations will be omitted where they are identical to Part 404.

[2] The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers from severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to Step Four.

At Step Four, the Commissioner determines whether the claimant's residual functional capacity allows the claimant to return to past relevant work. Residual functional capacity is a measure of the abilities which the claimant retains despite his impairment. 20 C.F.R. § 404.1545(a). Although medical opinions bear strongly upon the determination of residual functional capacity, they are not conclusive; the determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1465; Social Security Ruling 82-62. If the claimant's residual functional capacity allows him to return to past relevant work, then he is found not disabled; if he is not so able, the inquiry proceeds to Step Five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 ( 7th Cir. 1987); Social Security Law and Practice, Volume 3, § 43:1. If the ALJ correctly relies on the grids, vocational expert evidence is unnecessary. *Luna v. Shalala,* 22 F.3d 687, 691-92 (7th Cir. 1994). If the Commissioner establishes that sufficient work exists in the national economy that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

## VI.  ANALYSIS

The court will proceed through the five step analysis in order.

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision issued on March 25, 1999. (Tr. 17).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and forty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and

the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis the ALJ found Plaintiff suffered from severe impairments. Specifically, the ALJ found that Plaintiff suffered from spondylithesis of L5 on S1 and wrist pain that are medically determinable and severe. However, the ALJ determined that Plaintiff's bladder condition was not severe, as it does not impose any limitation on her ability to do work. (Tr. 17).

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from severe impairments. This finding is not challenged by either party and the court finds no reason to disturb it. The ALJ's finding as to Step Two of the Analysis is affirmed.

C. Step Three: Does claimant's impairment meet or medically equivalent to an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three the ALJ determined that Plaintiff's impairments do not meet or equal any impairment in Appendix 1 to Subpart P of Regulations number 4. (Tr. 17). The ALJ found that the objective medical evidence provided by Plaintiff in the form of medical records did not support a finding that Plaintiff's impairments reached listing severity. (Tr. 15).

Substantial evidence exists to support the ALJ's finding and the court finds no reason to disturb it. Therefore, the ALJ's determination as to Step Three of the Analysis is affirmed.

D. Step Four: Is the claimant capable of performing work which the claimant performed in the past?

In performing the analysis for Step Four, the ALJ determined that Plaintiff is unable to

13

perform any of her past relevant work. The finding of the ALJ as to Step Four of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step Four of the Analysis is affirmed. (Tr. 18).

E.   Step Five: Is the claimant capable of performing any work existing in substantial numbers in the national economy?

At Step Five The ALJ determined that although Plaintiff's Residual Functional Capacity did not allow her to perform the full range of light work, there existed a significant number of jobs in the national economy that she can perform. The ALJ found that Plaintiff was a younger individual, as defined by the Act, that she has at least a high school education, she obtained a GED in 1987, and does not possess any transferable skills. (Tr. 18). The ALJ made the determination that Plaintiff possessed the RFC to perform the function of work except for lifting more than twenty pounds occasionally and ten pounds frequently and she must be in a job that allows her to change position every forty-five minutes to an hour. (Tr. 18). That determination was based upon the RFC analysis completed by Dr. William Conroy on August 20, 1998 and the ALJ's review of the medical evidence, as well as Plaintiff's testimony and the information provided by Plaintiff in her application and informational forms. (Tr. 167-171). The ALJ found that Plaintiff's RFC did not significantly erode the occupational base as contemplated in the Medical Vocational Guidelines. (Tr. 18).

Plaintiff asserts that the ALJ erred in not according controlling weight to the findings of her treating physician, Dr. Stocker, with regard to her RFC. (Plaintiff's Memorandum at 5, filed 5/24/2001). In her hearing decision, the ALJ determined that Dr. Stocker's evaluation was not supported by objective findings and, therefore, the evaluation was entitled to no more than minimal weight. (Tr. 16). Plaintiff asserts that the ALJ incorrectly analyzed the issue and that SSR 96-2 P

provides that a treating source's medical opinion that is not well supported may not be entitled to controlling weight, but even if not entitled to controlling weight, the opinion should not necessarily be rejected. Plaintiff further points out that when asked about the availability of jobs for Plaintiff in light of Dr. Stocker's RFC evaluation, the vocational expert, Mr. Gehrig responded that with the limitations found by Dr. Stocker, there were no jobs remaining that Plaintiff could perform. (Plaintiff's Memorandum at 9, filed 5/24/2001). The responsibility of determining Plaintiff's RFC is the ALJ's and evaluations completed by physicians are factors to be considered by the ALJ and are not dispositive in and of themselves. The SSR cited by Plaintiff provides four requirements that must be met in order for a physician's opinion to be accorded controlling weight. In this case the ALJ properly determined, based upon the evidence provided by Plaintiff, that Dr. Stocker's opinion as to Plaintiff's RFC was not well supported by acceptable clinical and laboratory techniques and that her opinion was inconsistent with other substantial evidence. Therefore SSR 96-2 P would provide that Plaintiff's treating physician's opinion is not entitled to controlling weight. The weight that should be accorded to it is well within the ALJ's discretion and, in this case, there is no evidence indicating that the ALJ's decision to accord little weight to Dr. Stocker's evaluation was erroneous.

The ALJ noted that the opinions expressed by Dr. Stocker in the disability evaluation form had not been previously recorded in Plaintiff's treatment notes. (Tr. 15). Plaintiff's treatment notes indicate a course of conservative treatment with no diagnostic exams after 1993, no treatment for her spinal condition between 1993 and 1998, no surgery and little treatment through prescription medication. Dr. Stocker's findings as to Plaintiff's RFC are inconsistent with this course of treatment. The ALJ indicated that Dr. Stocker's evaluation was influenced by her sympathy for Plaintiff because Dr. Stocker's findings as reported in the disability evaluation are not included in

15

the treatment records. (Tr. 15). Also, as Defendant notes, Plaintiff is currently employed as a bus driver and is required to sit for at least two hours at a time which flatly contradicts both Plaintiff's and Dr. Stocker's assertion that she can sit for no more than thirty minutes at a time and must elevate her legs when sitting for prolonged periods of time. The ALJ did not err in failing to accord Dr. Stocker's opinions controlling weight. The ALJ's conclusions as to Plaintiff's RFC are supported by substantial evidence in the administrative record.

Plaintiff also asserts that the ALJ erred in failing to properly apply the vocational expert's testimony to Plaintiff's RFC. (Plaintiff's Memorandum at 9, filed 5/24/2001). Plaintiff asserts that the ALJ posed a sit/stand hypothetical to the vocational expert that required that Plaintiff be allowed to change from a sitting to a standing position at will and that SSR 83-12 is therefore relevant to this case. (Plaintiff's Memorandum at 11, filed 5/24/2001). SSR 83-12 provides that in cases where a sit/stand option at will is imposed, a vocational expert should be consulted to determine the effect of that limitation on the occupational base because unskilled jobs are usually structured so that employees are not able to sit and stand at will. This court is at a loss as to how this provision demonstrates an error on the part of the ALJ. In this case the ALJ did, in fact, consult with a vocational expert. The vocational expert provided the ALJ with information, in response to the ALJ's hypothetical, that allowed the ALJ to determine whether a substantial number of jobs exist that Plaintiff is capable of performing, given her functional limitations. Substantial evidence exists to support the ALJ's determination as to the occupational base, in light of Plaintiff's limitations. The ALJ's finding as to Step Five is therefore affirmed.

## VII. CONCLUSION

For the reasons stated above, this court finds that the ALJ's findings at each step of the sequential analysis are supported by substantial evidence. Therefore, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

ENTER:

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 12/14/01